IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **GRANT YODER, et al.,** | Case No. 3:17 CV 2321 |
| Plaintiffs, | Judge Jack Zouhary |
| v. | Magistrate Judge James R. Knepp, II |
| **CITY OF BOWLING GREEN, OHIO, et al.,** | |
| Defendants. | MEMORANDUM OPINION AND ORDER |

### INTRODUCTION

This is a case challenging allegedly unconstitutional zoning practices. The Court has jurisdiction under 28 U.S.C § 1331. The district judge has referred this case to the undersigned for general pretrial supervision. (Non-document entry dated February 20, 2018). Currently pending before the Court is Plaintiffs' "Motion for Leave to File Their First Amended Complaint to Reflect Additional Case Developments." (Doc. 12), to which Defendants have filed an Opposition (Doc. 14). Also pending is Plaintiff's Motion for Leave to file a Reply (Doc. 15), and Defendants Opposition (Doc. 16). For the reasons stated below, the undersigned GRANTS Plaintiffs' Motion for Leave to Reply (Doc. 15) and GRANTS Plaintiffs' Motion to Amend (Doc. 12).

### PROCEDURAL BACKGROUND

Plaintiffs Grant Yoder, Grady Wildman, Alex Kuczka, and Maurice A. Thompson, ("Plaintiffs") filed a Complaint on November 5, 2017. (Doc. 1). In it, they allege violations of the Fourteenth Amendment (Due Process) and Eighth Amendment (Excessive Fines) under 42 U.S.C. § 1983. They also allege violations of the Ohio Constitution, and seek declaratory and

injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. They challenge as unconstitutional Defendant City of Bowling Green's zoning prohibition on leasing a single family home to no more than three individuals, unless such individuals fall within the definition of a "family." Original Plaintiffs are three fraternity brothers (Yoder, Wildman, Kuczka), and the owner of the single family home they lease (Thompson).

The day following the filing of their Complaint, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 5). Following a phone status conference on November 7, 2017 before the district judge, the Court noted the parties "agreed to maintain the status quo - - specifically, Defendants will take no action against Plaintiffs - - until further order of this Court." (Doc. 8). The court later noted the motion for temporary restraining order and preliminary injunction was moot. (Non-document entry dated November 30, 2017).

On December 5, 2017, Defendants filed their Answer. (Doc. 10).

## DISCUSSION

On February 5, 2018, Plaintiffs filed the pending motion for leave to file an amended complaint. (Doc. 12). That motion seeks to add twenty-two rental property owners in the City of Bowling Green. *Id.* at 1. In support of amendment, Plaintiffs first assert the Amended Complaint states substantially identical claims, but simply adds additional Plaintiffs who are also subject to (and harmed by) the City of Bowling Green's zoning laws. Second, Plaintiffs assert adding the proposed Plaintiffs promotes judicial economy because they would otherwise seek joinder or class certification, intervene in the instant case, or file their own complaints. Third, Plaintiffs contend adding the proposed Plaintiffs clarifies the issues for the Court. Fourth, Plaintiffs argue Defendants have not been unduly delayed or prejudiced due to the early stage of the proceedings.

Defendants respond that a motion to amend is not the proper vehicle, but rather the proposed Plaintiffs should seek to intervene via Civil Rule 24. Further, Defendants contend the claims of both current Plaintiffs and putative plaintiffs are not ripe and they lack standing.

Plaintiffs have also filed a Motion for Leave to Reply (Doc. 15), which Defendant opposes (Doc. 16). In Reply, Plaintiffs assert Defendants arguments against permitting amendment are meritless. (Doc. 15).

Leave to Amend

Federal Civil Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, courts freely permit a party to amend its complaint,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment....

*Foman v. Davis,* 371 U.S. 178, 182 (1962).

Although Defendants contend amendment is "not the proper vehicle" to add plaintiffs, they cite no authority in support. And Plaintiffs cite authority to the contrary where courts have permitted amendment to add additional plaintiffs with claims similar to the original. *See, e.g.*, *Smith v. Leis*, 2009 WL 1687945, at *1-2 (S.D. Ohio); *In re Norplant Contraceptive Prod. Liab. Litig.*, 163 F.R.D. 255, 257 (E.D. Tex. 1995).

Moreover, the undersigned concludes, balancing the factors above, there is no undue delay, bad faith, or undue prejudice to Defendants in permitting amendment. This case was originally filed in November 2017 and is still in its preliminary stages. As such, the undersigned turns to Defendant's argument that amendment would be futile.

3

Standing / Ripeness / Futility

The proposed Amended Complaint (Doc. 12-1) raises substantially the same claims as the original Complaint (Doc. 1). Count One seeks Declaratory Judgment and Injunction under 28 U.S.C. § 2201, *et seq*. *See* Doc. 1, at 6-7; Doc. 12-1, at 11-12. Count Two alleges a Fourteenth Amendment Due Process violation under 42 U.S.C. § 1983. *See* Doc. 1, at 7-9; Doc. 12-1, at 12-13. Specifically, Count Two asserts a void-for-vagueness argument. *See id.* Count Three asserts violations of the Ohio Constitution with regard to private property rights. *See* Doc. 1, at 9-10; Doc. 12-1, at 14-15. And Count Four asserts a violation of the Excessive Fines Clause of the Eighth Amendment under 42 U.S.C. § 1983. *See* Doc. 1, at 11-12; Doc. 12-1, at 15-17.

Defendants contend the claims of both original Plaintiffs and putative plaintiffs are not ripe, they lack standing, and thus leave to amend should be denied. Defendants also suggest "*sua sponte* dismissal . . . might be appropriate." (Doc. 14, at 11). The undersigned interprets this as an argument that leave to amend should be denied as amendment would be futile.

An amendment is "futile" if "the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005). "Before granting leave to amend a complaint, a court need make only a minimal assessment of the merits of any proposed new claims . . . Namely, it must conclude that the proposed claims are not 'clearly futile' due to facial lack of merit, frivolousness, lack of jurisdiction, or other obvious legal defect." *Marr v. Foy,* 2008 WL 5111849, at *5 (W.D. Mich.) (citing *Bergmoser v. Smart Document Solutions, LLC,* 268 F. App'x 392, 396 (6th Cir. 2008) ("A motion to amend is 'futile' if it would not withstand a Rule 12(b)(6) motion to dismiss [for failure to state a claim on which relief can be granted].") (citing *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 42021 (6th Cir. 2000)); *accord* 6 Wright, Miller & Kane, 6 Fed. Prac. & Proc. Civ. 2d § 1487

(Cum.Supp. Nov. 2008) ("If a proposed amendment is not clearly futile, then denial of leave to amend is improper.") (citing, *inter alia, Consumers Petroleum Corp. v. Texaco, Inc.,* 804 F.2d 907 (6th Cir. 1986)). As one court explained: "The proper vehicle to address an amendment that is subject to dismissal—but not *clearly* so—is a standalone motion to dismiss, rather than [in response to] a motion for leave to amend a complaint." *United States ex rel. Griffith v. Conn*, 2015 WL 8682294, at *3 (E.D. Ky.) (emphasis in original).

Article III of the United States Constitution prescribes that federal courts may exercise jurisdiction only where an actual "case or controversy" exists. *See* U.S. Const. art. III, § 2. Courts have explained the "case or controversy" requirement through a series of "justiciability doctrines," including, "perhaps the most important," that a litigant must have "standing" to invoke the jurisdiction of the federal courts. *Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 279 (6th Cir. 1997). The Supreme Court has enumerated the following elements necessary to establishing standing:

> First, Plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted). It is Plaintiffs' burden to establish each has standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

Also relevant to the issues here, a challenge based on ripeness can implicate at least two justiciability questions: whether a "Case or Controversy" exists within the meaning of Article III of the Constitution, and whether the plaintiff has standing to pursue the claim. *Magaw*, 132 F.3d

at 279. "Ripeness requires that the injury in fact be certainly impending." *Id.* at 280 (internal quotation marks and citation omitted); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). One feature of standing is that the plaintiff demonstrate "actual present harm or a significant possibility of future harm." *Id.* at 279; *see also Lujan*, 504 U.S. at 560-61 (holding that Article III gives claimants standing to file a lawsuit in federal court if they establish injury, causation, and redressability). Those issues tend to meld together when the ripeness challenge, as here, is based on the real-versus-hypothetical nature of the threatened injury. *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 537–38 (6th Cir. 2011) *abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ("Indeed if a defendant's 'ripeness arguments concern only' the 'requirement that the injury be imminent rather than conjectural or hypothetical' then 'it follows that our analysis of [the defendant's] standing challenge applies equally and interchangeably to its ripeness challenge.'") (quoting *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006)); *see also Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 81 (1978) ("To the extent that issues of ripeness involve, at least in part, the existence of a live 'Case or Controversy,' our conclusion that appellees will sustain immediate injury . . . and that such injury would be redressed by the relief requested would appear to satisfy this requirement." (internal quotation marks omitted)); *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975) ("The standing question . . . bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention . . . .").

Plaintiffs seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, which expressly incorporates the constitutional requirement of standing: "in a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested parties seeking such a declaration, whether or not further relief is or could be sought." *Id.* § 2201(a). Thus, "[w]hen seeking a ruling under the Declaratory Judgment Act, [a party] must also demonstrate standing pursuant to the statute." *Motsinger v. Nationwide Mut. Ins. Co.*, 920 F. Supp. 2d 637, 642-643 (D.S.C. 2013) (addressing constitutional and Declaratory Judgment Act standing). "[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune Inc. v. Genetech, Inc.,* 549 U.S. 118, 126 (2007) (internal citations omitted). Thus, "[t]o establish standing under the Declaratory Judgment Act, there must be an 'actual controversy' in a constitutional sense." *Ampro Indus., Inc. v. Dr. Farrah Gray Pub., LLC*, 2013 WL 5426257, * 2 (W.D. Tenn.) (relying on *Magaw*, 132 F.3d at 279).

To determine whether a declaratory judgment action satisfies the case or controversy requirement, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127 (relying on *Maryland Cas. Co. v. Pac. Coal & Oil, Co.*, 312 U.S. 270, 273 (1941)). When bringing a claim under the Declaratory Judgment Act, whether a party has standing to sue, and there exists a controversy between the parties that is ripe often "boil[s] down to the same question." *MedImmune*, *Inc*., 549 U.S. at 128 n.8.

> As the Supreme Court explained:
>
> Our analysis must begin with the recognition that, where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction. For

> example, in *Terrace v. Thompson,* 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255 (1923), the State threatened the plaintiff with forfeiture of his farm, fines, and penalties if he entered into a lease with an alien in violation of the State's anti-alien land law. Given this genuine threat of enforcement, we did not require, as a prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff bet the farm, so to speak, by taking the violative action. *Id.,* at 216, 44 S.Ct. 15. See also, *e.g., Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Likewise, in *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), we did not require the plaintiff to proceed to distribute handbills and risk actual prosecution before he could seek a declaratory judgment regarding the constitutionality of a state statute prohibiting such distribution. *Id.,* at 458–460, 94 S.Ct. 1209. As then-Justice Rehnquist put it in his concurrence, "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity." *Id.,* at 480, 94 S.Ct. 1209. In each of these cases, the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do (enter into a lease, or distribute handbills at the shopping center). That did not preclude subject-matter jurisdiction because the threat-eliminating behavior was effectively coerced. See *Terrace, supra,* at 215–216, 44 S.Ct. 15; *Steffel, supra,* at 459, 94 S.Ct. 1209. The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is "a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

*MedImmune, Inc.*, 549 U.S. at 128–29.

Here, current Plaintiff Thompson has been threatened with enforcement of the zoning provision. *See* Doc. 1, at 5-6. And putative Plaintiffs Frobose and Wulff have been cited for violations. *See* Doc. 12-1, at 48-49. Moreover, current Plaintiffs and putative Plaintiffs, to the extent they have not been prosecuted, assert this is so "because the City has forced the Plaintiffs to comply with its Dwelling Prohibition, inflicting an injury insofar as they, through such forced compliance, are limited to leasing spacious homes to three or less individuals." (Doc. 15-1, at 4). And the Amended Complaint asserts that each landlord-Plaintiff owns at least one home that contains greater than three bedrooms, and is subject to the zoning restriction, and "desires to lease at least one [such] home to four or more unrelated individuals who are on the same lease." (Doc. 12-1, at 6). The undersigned therefore finds the Complaint, and Amended Complaint,

8

assert sufficient facts to show "under all the circumstances . . . that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127.[1] That is, there is a sufficiently immediate injury, caused by Defendants, that would be redressed by the relief requested.

Next, Defendants assert the tenant-Plaintiffs (Yoder, Wildman, and Kuczka) lack standing because "they cannot demonstrate an injury was sustained, that the defendants caused the injury, and lastly, that the defendants can redress the injury." (Doc. 14, at 8). Defendants assert that "the students' potential problem [in being forced to move] would not be proximately caused by the City's enforcement of the zoning code, but by the landlord in forcing all, some, or one to move, with the landlord's interests being adverse to the tenant's interests." *Id.* The undersigned concludes, however, that the tenant-Plaintiffs have sufficiently demonstrated an injury (having to move if their landlord is cited/fined), caused (albiet indirectly) by Defendants, that would be redressed with the relief requested under the Declaratory Judgment Act. *See, e.g.*, *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 (1987) (indirect "attenuated line of causation to the eventual injury" was sufficient to satisfy standing requirements at the pleading stage).

As noted above, leave to amend is to be "freely given", Fed. R. Civ. P. 15(a)(2), and the other factors relative to amendment weigh in favor of permitting amendment here. And, having reviewed the proposed Amended Complaint and concluded amendment is not clearly futile,

---

1. Further, the undersigned notes that, to the extent Defendants' Response asserts disputes with the underlying factual basis of Plaintiffs' Complaint and Amended Complaint, *see* Doc. 14, at 9-11 (asserting some putative Plaintiffs do not own property in Bowling Green based on public records), such arguments are premature at this stage. On its face, Plaintiff's Amended Complaint asserts each proposed Plaintiff owns affected properties within Bowling Green, *see* Doc. 12-1, at 4-6.

Plaintiffs' Motion for Leave to amend will be granted. Defendant remains free, of course, to challenge the Amended Complaint by way of a dispositive motion. To the extent Defendants assert any Plaintiffs' claims lack *merit* based on the facts and additional evidence outside the record, the Court concludes such arguments are also premature in responding to a motion to amend the complaint.

## CONCLUSION

For the reasons stated above, the undersigned GRANTS Plaintiffs' Motion for Leave (Doc. 15) and GRANTS Plaintiffs' Motion to Amend (Doc. 12).

 s/James R. Knepp II  
United States Magistrate Judge