IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**GRANT YODER, et al.,**   Case No. 3:17 CV 2321

    Plaintiffs,

    v.   Magistrate Judge James R. Knepp, II

**CITY OF BOWLING GREEN, OHIO, et al.,**

    Defendants.   MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Although Grant Yoder refers to Grady Wildman and Alex Kuczka as his brothers, the City of Bowling Green, Ohio does not. These three fraternity brothers and their landlord brought this action challenging the constitutionality of zoning code provisions which made their occupancy of a single-family house illegal. The Court has jurisdiction under 28 U.S.C §§ 1331 and 1367. The parties have consented to the undersigned's exercise of jurisdiction pursuant to pursuant to 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 29). Currently pending before the Court are: (1) Plaintiffs' Motion for Partial Summary Judgment (Doc. 30), which Defendants oppose (Doc. 35), and Plaintiffs reply (Doc. 36); and (2) Defendants' Motion for Partial Summary Judgment (Doc. 32), in response to which Plaintiffs filed a Motion to Stay Response (Doc. 33), which the undersigned granted (Non-document entry dated November 19, 2018). Amicus Curiae the Ohio REALTORS also filed a brief in support of Plaintiffs' Motion for Partial Summary Judgment. (Doc. 31-1). For the reasons stated below, the undersigned GRANTS Plaintiffs' Motion for Partial Summary Judgment (Doc. 30) and DENIES as MOOT Defendants' Motion for Partial Summary Judgment (Doc. 32).

**BACKGROUND**

Plaintiffs, a collection of homeowners and tenants who own and occupy regulated homes (hereinafter "Homeowner-Plaintiffs" and "Tenant-Plaintiffs"), challenge the constitutionality of the City of Bowling Green, Ohio's (hereinafter sometimes "the City") occupancy regulations, which prohibit occupancy of "single family" homes by three or more individuals if those individuals are not related by blood or marriage. The original Plaintiffs are three fraternity brothers (Yoder, Wildman, Kuczka), and the owner of the single-family home they lease (Thompson). *See* Doc. 1. The Court later permitted amendment to add additional Homeowner-Plaintiffs subject to the City's regulations. *See* Doc. 17.

Specifically, Plaintiffs claim the occupancy regulations (1) are unconstitutionally vague with respect to the criteria determining whether they apply; and (2) violate Plaintiffs' Equal Protection and Due Process rights under to the Ohio Constitution, insofar as the limit is arbitrary, unduly oppressive, and not equally applied to all similarly-situated homes. (Doc. 30). In their motion for partial summary judgment, Defendants argue they are entitled to summary judgment on the Eighth Amendment issue in Plaintiffs' Amended Complaint. (Doc. 32).

Sections 150.19 and 150.20 of the City's zoning code limit the use of most residential houses in areas zoned R-1 or R-2 to "single-family dwellings," which are in turn defined in Section 150.03 as "a building designed for occupancy by one (1) family for living purposes and including not more than two (2) lodgers or boarders." *See* Doc. 1-1, at 5. Of these terms, only "family" is defined; the definition reads: "[a]n individual or married couple and natural or adopted children thereof, or foster children placed by a duly constituted state or county agency, occupying a dwelling for purposes of habitation, and including other persons related directly to the individual

or married couple by blood or marriage." Section 150.03, Doc. 1-1, at 3.[1] As applied, therefore, a person may not lease his or her home to more than three individuals unless those individuals meet the definition of "family." However, there is no limit (in the zoning code) on the number of individuals who may live together if they do meet the definition of "family".[2]

These provisions state that their purpose is controlling density. *See* Doc. 1-1, at 6-7 (Sections 150.19 ("Purpose. This district is to create living areas of low population density for single-family dwellings.") and 150.20 ("Purpose. This district is to create living areas of moderate population density for single-family dwellings.")). Section 150.01, the general intent provision, states the zoning code as a whole is "[f]or the purpose of promoting the public health, safety, morals, comfort, and general welfare; conserving the values of property; facilitating the provision of public utilities, schools, and other public requirement; and lessening or avoiding congestion on public streets and highways." *Id.* at 2. In response to an interrogatory, the City additionally asserted:

> It has been found by studies commissioned by the City, publicly available on the City of Bowling Green website, that dwellings that are leased or rented to those in the 18-24 year old age group are concentrated around Bowling Green State University and in the south of the City and that in those areas of the City exterior code violations are more prevalent, disorderly conduct incidents are much greater than in other areas, nuisance parties are much greater than in other areas, and housing values are the lowest in the City.

(Doc. 30-1, at 8).

---

1. Hereinafter, the Court refers to these provisions together as the "dwelling limit".
2. The total number of occupants in a residence is otherwise regulated by the Wood County Health, Safety, and Sanitation Regulations for Structures and Vacant Lots, Chapter 405, *available at* http://www.woodcountyhealth.org/envhealth/documents/Housingregs.pdf (last visited January 14, 2019) ("Wood County Regulations"); *see also* City Ordinance 154.01 (adopting Wood County regulations).

Violation of single-family dwelling occupancy limits results in criminal prosecution. *See* Section 150.140(A), Doc. 1-1, at 8. Section 150.140(A) provides that "it shall be unlawful to . . . use any building or land in violation of any regulation . . . of this chapter . . ." *Id.* Meanwhile, the penalty section states that "any person . . . violating any regulation in . . . this chapter . . . shall be fined nor [sic] more than five hundred dollars for each offense. Each and every day during which such illegal . . . use continues, may be deemed a separate offense." Section 150.999(A), Doc. 1-1, at 8. And Section 150.999(B) declares that subsequent violations after a previous conviction "shall be a misdemeanor of the second degree." *Id.* Nothing in the penalty section requires knowledge on behalf of a homeowner or tenant.

One or more Plaintiffs in this case own a home subject to the dwelling limit. And Defendants in this case have enforced and threatened to enforce the dwelling limit against one or more of the Plaintiffs in this case. *See* Doc. 1, at 5-6, Doc. 19, at 46-50. This lawsuit was filed after an October 25, 2017 enforcement action whereby City of Bowling Green Code Enforcement Officer Jason Westgate indicated "currently four (4) people occupy this dwelling; therefore the dwelling unit is in violation. A violation of Chapter 150 of the Zoning Code of the City of Bowling Green is a minor misdemeanor and is punishable by a fine of $500.00. Each day is a separate violation." (Doc. 1-1, at 10). Westgate added: "If the violation is corrected by **November 3, 2017** <u>and</u> you have allowed a walk-through inspection of the single-family dwelling, the matter will be considered resolved. If not, charges will be filed at the Municipal Court." *Id.* (emphasis in original). The City identified Defendant Westgate as a "person with the greatest knowledge as to how the [dwelling limit] is enforced," (Doc. 12-1, at 26) and verified that Mr. Westgate's enforcement and threatened enforcement against Plaintiff Thompson was "in accordance with the policies of the City of Bowling Green" (Doc. 19, at 31).

While the Homeowner-Plaintiffs seek the right to lease homes with greater than three bedrooms to greater than three unrelated individuals, the Tenant-Plaintiffs, fraternity brothers, seek the right to associate and reside together in groups greater than three when a home contains greater than three bedrooms.

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*.

## DISCUSSION

Plaintiffs have moved for partial summary judgment, contending the dwelling limit is unconstitutionally vague and violates equal protection and due process under the Ohio Constitution. *See* Doc. 30. In support, Plaintiffs have proffered the following evidence: (1) the allegations in Plaintiffs' Amended Complaint, as verified by Plaintiffs' Declarations (Doc. 19, at 1-20); (2) Defendants' responses to the Interrogatories of Grant Yoder and to the Interrogatories of John Frobose and Kory Iott (Doc. 19, at 23-34, Doc. 30-1, at 1-11); (3) the City's list of

"grandfathered properties", *i.e.* the 233 homes exempt from the dwelling limit (Doc. 19, at 31-32, 35-42); (4) the Affidavit of Robert W. Maurer and subsequent Declarations of Troy Henricksen, Robert W. Maurer and Kory Iott (Doc. 30-1, at 13-21); and (5) evidence of the City's enforcement history (Doc. 19, at 46-50). Defendants have responded (Doc. 35), and Plaintiffs have replied (Doc. 36), making the Motion ripe for decision. Additionally, Defendants filed a Motion for Partial Summary Judgment (Doc. 32), in response to which Plaintiffs' filed a Motion to Stay Response (Doc. 33), which the undersigned granted (Non-document entry dated November 19, 2018). For the reasons discussed below, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment, and DENIES as MOOT Defendants' Motion for Partial Summary Judgment.

Level of Scrutiny

Article I, Section 19 of the Ohio Constitution provides that "[p]rivate property shall ever be held inviolate, but subservient to the public welfare."

As a threshold matter, Plaintiffs contend this Court must apply some form of heightened scrutiny to the City's dwelling limit because the limit (1) implicates private property rights that the Ohio Supreme Court has deemed "fundamental rights," and (2) purports to impose criminal penalties and considerable civil penalties with strict liability, even where those penalized may have acted without knowledge of an infraction or an intention to violate the dwelling limit. Plaintiffs further contend that the Ohio Constitution is more protective of their rights, even if counterpart federal constitutional claims were to fail.³

---

3. As the Honorable Judge Jeffrey S. Sutton of the Sixth Circuit Court of Appeals explained in his book, there are "many good reasons to answer the state constitutional question before the federal one in a dual-claim case. Nothing prevents federal courts from doing just that in their own cases—by resolving the state claim first—and if necessary requiring the advocates to brief the state claim carefully and thoroughly." JEFFREY S. SUTTON, 51 IMPERFECT SOLUTIONS: STATES AND THE MAKING OF AMERICAN CONSTITUTIONAL LAW 198 (2018). Here, the parties have thoroughly briefed the state constitutional issue.

The Court concurs on each front. First, under the Ohio Constitution, private property rights are "fundamental rights" to be "strongly protected". *See Norwood v. Horney,* 110 Ohio St.3d 353, 361-62 (2006) ("Ohio has always considered the right of property to be a fundamental right. There can be no doubt that the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces.") (citations omitted). Although the *Norwood* court dealt with a takings claim, it described the "rights related to property, i.e., to acquire, use, enjoy, and dispose of property" as "among the most revered in our law and traditions." *Id.* at 361.

Further, Ohio courts apply a higher level of scrutiny to such claims regarding property rights, and homeowners who have acted without knowledge or intent enjoy greater protections. *See Mariemont Apartment Ass'n v. Village of Mariemont,* 2007 WL 120727, at *7 (Ohio Ct. App.) (homeowners "have a constitutionally protected property interest in running their residential leasing businesses free from unreasonable and arbitrary interference from the government" under the Due Process Clause); *State ex rel. Pizza v. Rezcallah*, 84 Ohio St. 3d 116, 128 (1998) ("Where there is 'no intentional wrongdoing, no departure from any prescribed or known standard of action, and no reckless conduct' and where the owner was not entirely 'free to act or not, as it chose" because of legal and practical considerations, such as requirements of eviction law and the limits on self-help potentials in evicting a criminal trespasser, infliction of a penalty is 'so plainly arbitrary and oppressive as to be nothing short of a taking of [his/her] property without due process of law.'") (internal citation omitted); *Boice v. Ottawa Hills,* 137 Ohio St. 3d 412, 416-17 (2013) (invalidating zoning regulation requiring lots of a certain size because of "disparate treatment of the residents in the village when it came to permitting houses to be built on lots smaller than 35,000

7

square feet," a *de minimis* difference between prohibited and permitted, and other similarly situated houses were "grandfathered in").

In *Pizza*, the Ohio Supreme Court explained that "the free use of property guaranteed by the Ohio Constitution can be invaded by an exercise of the police power only when the restriction thereof bears a *substantial relationship* to the public health, morals and safety." 84 Ohio St. 3d at 131 (emphasis added) (internal citation and quotation omitted). And, in *Boice*, the court invalidated a zoning restriction under a takings analysis due to disparate treatment. 137 Ohio St. 3d at 417. ("It was clearly arbitrary for the village to single this lot out for a denial of the grandfathering-in treatment enjoyed by similar lots in the same neighborhood!").

Further, even a under lower level of scrutiny, "the classification at issue may not be arbitrary: "the attempted classification must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis." *State v. Mole*, 149 Ohio St. 3d 215, 222 (Ohio 2016) (internal quotations and citations omitted).[4]

Taken together, the undersigned concludes that Ohio courts, interpreting the Ohio Constitution, apply something higher than rational basis review, but less than strict scrutiny to cases involving property rights. With these principles in mind, the undersigned turns to the City's dwelling limit.

---

4. Likewise, "[t]hough the degree of review" for vagueness "is not described with specificity", "if the enactment 'threatens to inhibit the exercise of constitutionally protected rights,'" (such as property rights in Ohio), "a more stringent vagueness test is to be applied." *Norwood,* 110 Ohio St.3d at. 379 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982)).

Application

Upon review, the Court concludes the dwelling limit is impermissibly arbitrary, oppressive, and untailored based on the rationale provided in the above cases: the limit applies unequally, is under-inclusive, over-inclusive, and can punish innocent owners. Within the regulations, the City claims to be effectuating a governmental interest in limiting population density. *See* Doc. 1-1, at 6-7 (Sections 150.19 ("Purpose. This district is to create living areas of low population density for single-family dwellings.") and 150.20 ("Purpose. This district is to create living areas of moderate population density for single-family dwellings.")). In their response to Plaintiffs' motion, Defendants cite Section 150.01, the general intent provision, which states the zoning code is "[f]or the purpose of promoting the public health, safety, morals, comfort, and general welfare; conserving the values of property; facilitating the provision of public utilities, schools, and other public requirement; and lessening or avoiding congestion on public streets and highways." *See* Doc. 1-1, at 2. And, Defendants contend, dwellings leased or rented to college-age individuals result in more exterior code violations, nuisance parties, and disorderly conduct incidents. (Doc. 35, at 8) (citing Answers to Discovery Requests, Doc. 30-1, at 8-9). But the City's dwelling limit only focuses on the type of relationship between those living together in a home, and as such, is both over- and under-inclusive with respect to either of these interests. The Court thus concludes the dwelling limit is an "unreasonable and arbitrary" restriction on the issue of property, *see Mariemont Apartment Ass'n,* 2007 WL 120727, at *7, and does not bear a "substantial relationship" to its avowed goals, *see Pizza*, 84 Ohio St. 3d at 131.

First, the law is under-inclusive as to any governmental interest. There are 233 houses in the City which, irrespective of size, are "grandfathered in" and therefore exempt from this regulation. *See* Doc. 19, at 35-42; *see also Boice*, 137 Ohio St. 3d at 416-17 (considering

9

grandfathered-in properties as one factor demonstrating disparate treatment). And, while the dwelling limit does not forbid an unlimited number of related adults from dwelling together in a four-bedroom home, assuming compliance with the Wood County Regulations[5], just four unrelated adults may not do the same. Paradoxically, under the dwelling limit, again assuming compliance with health regulations, ten related individuals could reside in a two-bedroom home with no parking, while only three unrelated individuals may reside in a six-bedroom home with abundant parking. And, the City indicates that even the most attenuated family connection suffices: four third cousins may live together without penalty (*see* Doc. 19, at 29), even though few would elevate such a relationship above a close friendship, a romantic relationship, or a couple engaged to be married.[6]

Second, the dwelling limit is over-inclusive as to its purported goals. The dwelling limit prohibits living arrangements that have no greater impact on population density than those of a family. A house with four unrelated roommates creates no more population density than one with four related roommates. Rather than regulating based on *space*, the dwelling limit operates based

---

5. *See* Doc. 30-1, at 9 ("The Wood County health code sets forth limitations on the square footage per person of a dwelling's living space, sleeping space, [and] toilet facilities.") (Defendants' response to interrogatories); *see also* Wood County Regulations, *http://www.woodcountyhealth.org/envhealth/documents/Housingregs.pdf* (last visited January 14, 2019) ("Wood County Regulations"); *see also* City Ordinance 154.01 (adopting Wood County Regulations).

6. Moreover, as the Ohio REALTORS point out, "the City has been inconsistent with its interpretation" of what constitutes a sufficient familial relationship to satisfy the definition of "family". (Doc. 31-1, at 13). In 1997, the City indicated that "cousins [are] not considered family as defined in the City Code" (Doc. 1-1, at 18), whereas currently the City does consider even third cousins family (Doc. 19, at 29) ("Third cousins qualify as family."). The REALTORS note that "[a] different code enforcement officer may take a different interpretation in the future" and "[t]he uncertainty over the definition makes it difficult for REALTORS to perform one of their most important job functions—advising clients." (Doc. 31-1, at 13).

on *relationship*.[7] That is, there is no reasonable relationship between the end and the means used to effectuate it. Individuals – related or not – create the same population density.[8] Moreover, the dwelling limit sweeps far more broadly than just to avoid purported problems with college-aged renters. The dwelling limit prohibits any four unrelated individuals, regardless of their propensity to cause disturbances. And the City does not explain why prohibiting more than three college-aged

---

7. Although the United States Supreme Court has indicated that regulations such as the dwelling limit may not violate the *federal* Equal Protection Clause, *see Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974), it subsequently acknowledged such restrictions were quite plausibly unconstitutional under state constitutions, *see Moore v. City of E. Cleveland, Ohio,* 431 U.S. 494, 516-17 (1977). In *Moore*, the Court explained:

> "[A]ttempts to limit occupancy to related persons have not been successful. The state courts have recognized a valid community interest in preserving the stable character of residential neighborhoods which justifies a prohibition against transient occupancy. Nevertheless, in well-reasoned opinions, the courts of Illinois, New York, New Jersey, California, Connecticut, Wisconsin, and other jurisdictions, have permitted unrelated persons to occupy single-family residences notwithstanding an ordinance prohibiting, either expressly or implicitly, such occupancy.

*Id.* And, as detailed above, the Ohio Constitution is more protective of private property rights than its federal counterpart, the Ohio Supreme Court insists upon a more stringent Equal Protection analysis. *See Norwood,* 110 Ohio St. 3d at 361-62; *Pizza*, 84 Ohio St. 3d at 132; *Boice,* 137 Ohio St.3d at 416-17, ¶17-19; *see also* SUTTON, *supra* note 2 at 16 ("Nothing compels the state courts to imitate federal interpretations of the liberty and property guarantees in the U.S. Constitution when it comes to the rights guarantees in their own constitutions, even guarantees that match the federal ones letter for letter.").

8. Many other states have invalidated, on state constitutional grounds, regulations that claim to address *density* but instead target the *identity* of a home's inhabitants. *See Distefano v. Haxton*, 1994 WL 931006, at *14 (R.I. Super.); *Kirsch v. Prince George's Co., Maryland,* 626 A.2d 372, 380-81 (Md. 1993); *Borough of Glassboro v. Vallorosi*, 568 A.2d 888, 892-85 (N.J. 1990); *Baer v. Town of Brookhaven*, 73 N.Y.2d 942, 942-44 (N.Y. 1989); *McMinn v. Town of Oyster Bay*, 66 N.Y.2d 544, 546–54 (N.Y. 1985); *Kirsch Charter Twp. of Delta v. Dinolfo,* 351 N.W.2d 831, 840-48 (Mich. 1984); *City of Santa Barbara v. Adamson*, 610 P.2d 436, 440, n.3 (Cal. 1980); *Holding Co. v. Borough of Manasquan*, 281 A.2d 513, 518-20 (N.J. 1971).

renters from living together prevents these issues.[9] That is, why are four unrelated roommates more problematic than three?

Finally, the dwelling limit impermissibly imposes strict liability even on occasions where the homeowner may not be aware that four unrelated individuals are residing within a home that he or she owns. *See Pizza,* 84 Ohio St. 3d at 128 (noting that infliction of a penalty when "there is no intentional wrongdoing" is arbitrary and oppressive).

Thus, the limit is arbitrary, unduly oppressive, fails to substantially advance the avowed government interests of reducing population density or targeting specific issues with college-aged inhabitants, and treats similarly-situated homeowners and tenants differently without any justifiable basis. Consequently, the Court finds the dwelling limit is unconstitutional, as applied, and therefore unenforceable. Accordingly, this Court elects not to address Plaintiffs' other claims or Defendant's Motion for Summary Judgment (which is hereby denied as moot), because the ordinance can be enjoined on state equal protection and due process grounds alone.

For the foregoing reasons, this Court finds Plaintiffs are entitled to summary judgment as a matter of law on their due process and equal protection claims under the Ohio constitution: the City's dwelling limit, insofar as it limits the occupancy of homes to a number of unrelated individuals less than the number of bedrooms available to accommodate them, is unconstitutional. Accordingly, Plaintiffs' Motion for Partial Summary Judgment (Doc. 30) is granted.

---

9. As the REALTORS note, problems with noise, property maintenance, parking and traffic congestion can be rationally dealt with in more specific manner – with "zoning ordinances that address specific use concerns" – rather than with "ordinances that generalize about the social characteristic of unrelated households." (Doc. 31-1, at 9).

## CONCLUSION

For the reasons stated above, the undersigned GRANTS Plaintiffs' Motion for Partial Summary Judgment (Doc. 30) and DENIES as MOOT Defendants' Motion for Partial Summary Judgment (Doc. 32).

IT IS ORDERED THAT the City of Bowling Green is permanently enjoined from enforcing Zoning Code Sections 150.19 and 150.20 (in combination with the definitions in Section 150.03) so as to prohibit, fine, or punish the occupancy of a home when the number of unrelated occupants does not exceed the number of bedrooms.[10]

                                                              s/James R. Knepp II
                                                         United States Magistrate Judge

---

10. According to the plans for the residence as originally submitted to the building official with jurisdiction over the City of Bowling Green or as subsequently altered pursuant to permit duly issued by said building official. Nothing in this Order shall be construed as limiting new construction or new additions to existing structures in the future so long as a permit has been issued by said building official. Under no circumstances shall dining rooms, living rooms, kitchens, or any space other than a designated bedroom, be counted as bedrooms for purposes of this Order.